Magill and another vs. Stoddard.

MAGILL and another, Respondents, vs. STODDARD, Appellant.

*November 2 — November 22, 1887.*

CONTRACTS. *(1) Evidence: Written contract perfected or modified by parol. (2) Agency: Sale of land: When right to commission accrues. (3) New agreement: Waiver of commission earned.*

1. Defendant authorized plaintiffs, in writing, to sell or procure a purchaser for his land for $1,600, and to execute a contract for such sale, and agreed to pay them a commission. *Held,* that it might be shown that he afterwards orally authorized them to accept $600 in cash and the balance on time secured by mortgage.

2. Plaintiffs procured a purchaser ready and willing to take the land upon the terms fixed, but defendant thereupon revoked their authority and refused to carry out the sale. *Held,* that the plaintiffs might recover the commission.

3. After defendant had refused to sell the land as at first agreed, the parties made a new contract by which plaintiffs were to sell or find a purchaser for the land at a higher price. *Held*, that this did not destroy plaintiffs' right to recover the commission already earned, unless they agreed that it should have that effect.

APPEAL from the Circuit Court for *La Crosse* County. The case is sufficiently stated in the opinion.

For the appellant there was a brief signed by *Prentiss, Hughes & Miller*, attorneys, and *J. M. Morrow*, of counsel, and the cause was argued orally by *Mr. Morrow*.

For the respondents there was a brief by *Fruit & Brindley*, and oral argument by *Mr. Fruit*.

ORTON, J. This action was brought in a justice's court to recover the per cent. or compensation alleged to have been promised by the defendant to the plaintiffs for procuring a purchaser for certain lands of the defendant upon the terms agreed upon by them. The defendant recovered judgment before the justice, which was appealed to the circuit court, and in that court the plaintiff obtained a verdict for the said compensation and interest. There was a motion for a new trial on the sole ground that the verdict was contrary to the law and the evidence, which was overruled, and exception taken. From the judgment on this verdict this appeal is taken.

There are some exceptions to the ruling of the court in admitting certain evidence, and to the charge of the court in some particulars, but the main question is upon the legal effect of the facts proved, or whether the verdict is contrary to the law or evidence. We have examined the whole charge, and particularly the parts thereof excepted to, and can find nothing objectionable, if the evidence admitted was competent. There is only one exception to evidence urged in the brief of the appellant's counsel, or that need be considered. Whether the contract proved is valid will

be considered with the legal effect of all the evidence to warrant the verdict.

The contract is as follows, viz:

"LA CROSSE, WISCONSIN, August 18, 1885.

"*To Magill Brothers, La Crosse, Wisconsin* — GENTLE-MEN: You are hereby to sell or procure a purchaser for the sale of the following real estate and premises [described], at any time within one year from date, for the consideration of $1,600, and you are authorized to execute a contract for such sale to such purchaser or purchasers in our name, upon the foregoing terms; and for the selling of or procuring a purchaser for such premises, I agree to pay you five per cent. commission upon said $1,600. In case said premises are sold by us, though not through your procurement, within such time, we agree to pay you ——— per cent. commission on the purchase money.

[Signed] "CHAS. L. STODDARD."

It will be observed that the terms, whether cash down or some of it on time, are not given, but perhaps it might be assumed that such terms must be cash down.

1. There was testimony offered on behalf of the plaintiff to show that the terms were fixed by parol agreement to be $600 cash and the balance to be secured by mortgage upon the premises. This was objected to by the defendant's counsel on the ground that parol evidence could not be admitted to vary or alter the written contract. On the ground that the written contract shows only part of the transaction and is silent as to the terms of the sale, such evidence is competent to supply the defect. *Frey v. Vanderhoof,* 15 Wis. 397; *Ballston Spa Bank v. Marine Bank,* 16 Wis. 120; *Jones v. Keyes,* 16 Wis. 562; *Hahn v. Doolittle,* 18 Wis. 196; *Peterson v. Johnson,* 22 Wis. 21; *Jilson v. Gilbert,* 26 Wis. 637; 1 Starkie, 267; 2 Pars. Cont. 66. It would seem that the terms upon which the sale might be made were not expressed in the written contract or implied therefrom, from

the fact that the plaintiffs were authorized to *execute a contract* for the sale, which would not be necessary if the terms were cash down. What should be the terms of the contract of sale seems to have been omitted. But if the written contract was obscure or doubtful on this point, parol evidence would be competent to make it certain. *Musgat v. Pumpelly*, 46 Wis. 660. But on the ground that the contract expressed or implied cash terms, then the testimony was equally proper to show a change of the contract, or a new one in that respect. *Brown v. Everhard*, 52 Wis. 205; *Goss v. Lord Nugent*, 5 Barn. & Adol. 58. The contract was, therefore, that the plaintiffs should find a purchaser of the premises for $600 cash and the balance on time secured by mortgage upon the premises.

2. Did the evidence warrant the verdict? *Edwin B. Magill*, one of the plaintiffs, testified substantially that about eight weeks after the date of the contract, he procured a purchaser for said land in the person of one James Canterbury on said terms. It is argued by the learned counsel for the appellant that such terms were not agreed upon between the witness and said Canterbury, but that the latter offered only $400 cash down. The learned counsel omits to notice the testimony of the witness upon this point. After testifying that Canterbury wished to get the land if he could by paying only $400 down, the witness was asked to state the conversation, and he answered: "He said he would take the farm; that was settled." He was then asked: "At what?" and answered: "At $1,600, and $600 down." It is true that Canterbury wished to get the land if he could by paying only $400 down, and the witness tried to have the defendant so modify the terms, but he refused to do so. He testified further that the next morning he told the defendant he had a purchaser for the farm, and he seemed pleased with it, and that he went to Canterbury to get some money to settle the bargain, and found

him sick and unable to do business. In two or three days afterwards, the witness received a note from the defendant, which was then mislaid or lost, saying that he had received a letter from his wife, who was east, saying that she was unwilling to sell the farm for $1,600, and would not sign the deed. The defendant therefore refused to carry out the bargain on those terms. The witness thereupon demanded said commissions that he had earned, and the defendant refused to pay them until the farm was sold upon the new terms they might thereafter fix, and the witness told the defendant that they would have nothing more to do with it, and he saw said Canterbury as soon as he was able to be seen, and told him that he could not sell him the farm and the above reasons why he could not do so. The said James Canterbury, as a witness for the plaintiffs, testified, substantially, that *Edwin Magill*, one of the plaintiffs, came to him in September, 1885, and proposed to sell him said premises for $1,600, $600 down and the balance on mortgage, and that he agreed to purchase the same on those terms, and was able and willing to comply with said terms.

The evidence, under the authorities, most clearly establishes the defendant's liability to pay the plaintiffs said commission of five per cent. upon the $1,600. The plaintiffs had fully performed the contract upon their part of furnishing a purchaser of said premises on the terms agreed upon, and the defendant prevented the consummation of the sale to such purchaser on his own responsibility. The plaintiffs did all they agreed to do or were able to do. This would seem to be a very plain case, without any doubt or difficulty. The plaintiffs produced the purchaser ready and willing to purchase on the terms fixed, and the defendant revoked their authority to sell on those terms, and refused to carry out the sale, as in *Kelly v. Phelps*, 57 Wis. 425. The plaintiffs performed their contract, and were as entitled to receive their compensation as the plaintiff in *O'Connor*

*v. Semple*, 57 Wis. 243, or as the assignee of the middleman in *Orton v. Scofield*, 61 Wis. 382. See, also, as in point, *Delaplaine v. Turnley*, 44 Wis. 31; *Stewart v. Mather*, 32 Wis. 344; *McGavock v. Woodlief*, 20 How. 221; *Fraser v. Wyckoff*, 63 N. Y. 448.

There was evidence that the parties made another contract in November following, for the plaintiffs to sell the premises or procure a purchaser for the same for $2,000 at a less per cent. But from the testimony for the plaintiffs this was a new and independent agreement and was not in any sense a modification of the first one, and the plaintiffs always insisted upon their compensation according to the terms of the first one. The instruction of the court that this new arrangement to sell on different terms would not destroy the plaintiffs' right to recover the commissions they had already earned unless they agreed that the new privilege of selling it should be a payment and satisfaction of the first contract, was clearly correct, and the testimony for the plaintiff was that there was no such agreement, and so the jury must have found. The new contract, therefore, cuts no figure in the case on this appeal.

The evidence warranted the verdict, and there was no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 26 Cent. L. J. 292-4.— REP.