NEISES, Respondent, vs. HESSELMANN, Appellant.

*December 7, 1922—January 9, 1923.*

*Principal and agent: Parol evidence to explain transactions: Con-
veyance to agent: Oral agreements.*

Plaintiffs, who were husband and wife, having appointed the
defendant an exclusive agent to sell their farm, and later,
at his request, having executed a contract by the terms of
which they agreed to convey the farm to him for $49,000,
were properly permitted to prove by parol evidence that the
contract was made with the agent to enable him to better
dispose of the property, and that he had orally agreed to
divide with them any sum above $50,000 received on a sale.

APPEAL from a judgment of the circuit court for Grant
county: S. E. SMALLEY, Circuit Judge. *Affirmed.*

The plaintiff, being the owner of a farm in Grant county,
on the 19th day of May, 1919, employed the defendant as
his agent to produce a purchaser therefor under and by a
contract in writing, as follows:

"We, *Joseph Neises* and Margaret Neises, his wife, of
Grant county, Wisconsin, do hereby appoint *G. H. Hessel-
mann* of Dubuque county, state of Iowa, our exclusive agent
to December 1, 1919, for the sale of the following described
real estate located in Grant county, Wisconsin: The east
one-half of section 7; also fourteen acres off the south side
of the east one-half of the southeast quarter of section 6,
all in township 4 north, range 5 west, less one acre for
school purposes, consisting of 332 acres more or less. We
agree to sell the above described real estate net to us
exclusive of any profits and commissions at the following
price and terms: The entire farm of 332 acres at $49,000.
The southeast quarter of section 7, being 160 acres, at
$28,800. The southeast quarter of section 7 and the south-
west quarter of the northeast quarter of section 7, being
200 acres, at $35,000. Terms: $1,500 on day of sale. On
333 acres, $22,500; on 200 acres, $15,000; on 160 acres,
$14,000, in cash on March 1, 1920, when possession will
be given for the balance of the purchase price. We hereby

agree to take a first mortgage on that part of the real estate above described which is sold due March 1, 1925, with interest at five per cent. from March 1, 1920. Said *G. H. Hesselmann* to have any amount over and above said price that said real estate may be sold for, as full compensation for making said sale of above described real estate. We also agree to furnish warranty deed and abstract showing perfect title. Dated May 19, 1919. *Joseph Neises,* Maggie Neises. If not sold on August 1st, *Joseph Neises* reserves the right to sell the east half of the northeast quarter, north half of the northeast quarter of section 7 and the south fourteen acres off the south side of the east half of southeast quarter of section 6."

In the latter part of September, 1919, plaintiff and defendant had a conversation with reference to the sale of the farm. This was at the farm. The plaintiff told defendant there were a lot of people coming around to buy land now and he had a good chance to sell, and defendant said, Turn it over to me and I will give you one half of what I get above $50,000. Plaintiff agreed that if he would give him half of what he got above $50,000 he would turn the title over to defendant. No papers were made out at that time. A few days later defendant wrote plaintiff that he had sold the farm and for plaintiff and his wife to go to the bank at Cassville and sign a contract which defendant was forwarding to the bank; that defendant would not be able to meet them at the bank because he was going west on a business trip. Plaintiff and his wife went to the bank at Cassville on the 2d day of October, 1919, and signed a contract which the defendant had forwarded to the bank. This was an ordinary land contract by the terms of which plaintiff and his wife agreed to convey to the defendant the land described in the agency contract of May 19, 1919, for $49,000, payable $1,500 upon the execution of the contract, $1,750 in cash on March 1, 1920, and as to the balance it was agreed that the defendant would execute to the plaintiff a mortgage for $30,000. Defendant's personal

check for $1,500 was turned over to the plaintiff at that time.   A few days after, the defendant executed to one Althoff a similar contract by which the said Althoff agreed to pay $58,275 for the land.   On March 1st both deals were completed.   The plaintiff and his wife executed to the defendant their warranty deed and the defendant in turn conveyed the property to Althoff.   Defendant, however, refused to give plaintiff more than $49,000.

This action was brought by the plaintiff to recover one half of the amount received by the defendant for the farm in excess of $50,000.

The action was tried before a jury.   In response to a question submitted in the form of a special verdict the jury found that it was agreed between plaintiff and defendant that as a part of the consideration for the execution of the contract dated October 2, 1919, in the event defendant sold the land described in said contract before March 1, 1919, he would pay to plaintiff one half of whatever sum he sold the land for over $50,000.   On this verdict judgment was rendered in favor of the plaintiff and against the defendant for the sum of $4,652.63.   From such judgment defendant brings this appeal.

For the appellant there were briefs by *Graves & Earll* of Prairie du Chien, and oral argument by *W. R. Graves.*

*Alexander Athey* of Prairie du Chien, for the respondent.


OWEN, J.   This action is based on the theory that the plaintiff and his wife executed the contract of October 2, 1919, for the purpose of clothing their agent with the legal title to the land to enable him to better dispose of the farm, and that they were induced so to do by reason of the promise made by the defendant that he would give them half of all he received for the farm above $50,000 if plaintiff would turn the farm over to him.   The sole question raised on this appeal is whether oral evidence introduced to show the oral

agreement made by the defendant in this respect was competent.

Defendant claims that the contract of October 2, 1919, is valid and complete in itself, shows the agreement and all of the agreement between him and plaintiff, and that parol evidence is inadmissible to alter or vary the terms of that contract. We have been favored with a very able brief on the part of respondent's counsel stressing the proposition that as the contract of October 2, 1919, was between principal and agent dealing with the subject of the agency, a burden rested upon the agent to prove the *uberrima fides* of the transaction and to establish the perfect fairness of his dealing in the matter. We deem it unnecessary to consider whether the contract in question falls within that class of contracts made between principal and agent which the law scrutinizes with great care and will set aside unless it appears affirmatively that the agent exercised the utmost of good faith towards his principal.

The parol testimony offered to show the real purpose of executing the contract of October 2, 1919, is clearly admissible under *Russell v. Andrae,* 79 Wis. 108, 48 N. W. 117, and *Riemer v. Rice,* 88 Wis. 16, 59 N. W. 450. In the former case it was said:

"Agents are frequently invested by their principals with the title to property, for convenience in making sales thereof, and we are aware of no rule of law which excludes parol testimony to show the purpose of the transaction when proof of it becomes necessary."

In *Riemer v. Rice,* 88 Wis. 16, 59 N. W. 450, this principle was applied to enable an agent to show as against his principal that an option given to him by his principal for the purchase of an hotel property for $40,000 was merely given for the purpose of enabling him to make a sale thereof and that it was agreed that the agent should receive from the principal all that he got for the hotel property above $35,000. We see no distinction between that case and this.

Certainly the law is as considerate of the rights of the principal as against the agent as it is of the rights of the agent as against the principal. We regard the rule as very' sound and wholesome, especially when applied to protect the principal from the misconduct of the agent. Parol testimony in this case leaves little room to doubt that the oral promise to pay one half of what was realized in excess of $50,000 was made, and that every requirement of justice demands that the judgment appealed from should not be disturbed.

*By the Court.*—Judgment affirmed.