Alexander Hamilton Institute, Appellant, vs. Hart, Respondent.

*February 7—March 6, 1923.*

*Contracts: Rescission of written executory agreement: Question for jury: Burden of proof: Note below signature as part of contract: Enrolment in correspondence school: Payment of tuition: Dependent or independent covenants: Breach: Measure of damages.*

1. An executory contract in writing may be rescinded by an oral contract, and such rescission may be by express agreement or may be inferred from the acts of the parties.
2. Whether or not there is a rescission, being generally a question of intent, ordinarily forms an issue for the jury.
3. A note below the signature to a contract to pay a stipulated sum for enrolment in a correspondence school course of instruction which provided that the contract was not subject

to revocation and that no reduction or allowance would be made because of refusal or inability to enter on or continue the course is a part of the contract.

4. While such a note will not bar a mutual cancellation of the contract, it may be persuasive in determining whether under the evidence such a cancellation was effected. .

5. In an action on a contract it is incumbent on one who interposes a defense of rescission to establish the same by a clear preponderance of the evidence.

6. Evidence that defendant consigned a package of books by express to plaintiff at a certain city is not sufficient to support the finding of the jury that text-books furnished defendant had been returned by him and accepted by plaintiff, so as to establish the defense of rescission, in the absence of evidence that plaintiff maintained its place of business at such city, that the books were the same as those transmitted to defendant, or that the expressage was paid.

7. In view of express provisions of the contract and of the note below the signature, and the defendant's testimony that the services contemplated written or printed instructions, directions, and correspondence, evidence that the course was to include oral lectures by prominent business men is incompetent.

8. The evidence is *held* not to support the finding of the jury that plaintiff failed to furnish oral lectures as agreed, or that the lectures delivered were not accepted by defendant as a compliance with the contract.

9. The measure of damages for breach of the contract is the entire contract price, in the absence of evidence of facts reasonably and definitely tending to mitigate the damages.

10. The contract providing for the payment by defendant of a stipulated sum in seventeen monthly instalments, in consideration of his enrolment in a course of instruction agreed to be furnished by the school during a period of two years, and providing that, if any of the balance remained unpaid for sixty days, the entire balance should become due and payable, that the contract was not subject to revocation, and that no reduction or allowance would be made because of refusal or inability to complete the course, embraces independent covenants, failure to perform one of which cannot be relied on as a defense by the other party,—the mere promise, and not the performance thereof, constituting the consideration.

APPEAL from a judgment of the municipal court of Brown county: N. J. MONAHAN, Judge. *Reversed.*

The appeal is from a judgment dismissing plaintiff's complaint, with costs.

Plaintiff is a foreign corporation engaged in conducting a correspondence school, maintaining its principal office and place of business in the city of New York. In January, 1920, the parties entered into an agreement in writing, pursuant to which the defendant, an advertising manager of the Goodrich Rubber Company, of Milwaukee, enrolled as a student in what is called the Modern Business Course and Service, extending over a period of two years, and including, as provided in the agreement:

Modern Business Text—twenty-four bound volumes, containing a digest of present-day business principles and practice—forwarded immediately express prepaid.

Modern Business Talks—directing reading of text—one every two weeks.

Modern Business Lectures—the experience of prominent business men—one every month.

Modern Business Problems—actual business problems, solutions to which will be reviewed—one every month.

Modern Business Service—answers to all inquiries in connection with the course; four Modern Business Reports to be selected by subscriber; monthly letter on Business Conditions and the Monthly Financial and Trade Review.

The agreement further provided:

"In consideration of my enrolment for the above Course and Service, I agree to pay to your order the sum of $136 at $8 per month."

This agreement was signed by the defendant, and beneath the signature are the business and residence addresses of the defendant, an acknowledgment of the receipt of the initial payment of $8, and then follows a paragraph called "Note:"

"All payments . . . are to be sent by mail to the order of the *Alexander Hamilton Institute.* Should any part of the balance remain due and unpaid for sixty days, the entire

balance becomes immediately due and payable. This contract is not subject to revocation; no reduction or allowance will be made on account of refusal or inability to enter upon or continue the course; no modifications or conditions, except as herein expressed in writing, will be recognized. The retention of this application by the *Institute* denotes its acceptance."

In its complaint the plaintiff alleges full compliance with the contract and demands judgment for the sum of $104, the amount of the unpaid balance.

In his answer the defendant, among other things, alleges that it was agreed that the course of instruction referred to in the contract included a series of oral lectures by prominent Milwaukee business men on business topics to a class of which the defendant was a member, and that the plaintiff breached such provision by failing and refusing to provide such lectures, and that defendant on that account canceled the contract. As a second defense it was alleged that the books referred to in the contract were returned to the plaintiff and accepted by it as a cancellation of such contract.

Defendant, being called as an adverse witness for the plaintiff, made it clear that the service referred to in the contract contemplated written or printed instructions, directions, and correspondence. When called as a witness in his own behalf he testified that at the time he signed the contract one Mr. Atkinson, plaintiff's agent at Milwaukee, represented to him that the giving of a course of lectures by prominent Milwaukee business men would constitute part of the service, although it was not mentioned in the written contract. It also appears that for two or three months during the spring of 1920 the lectures by business men were actually delivered, but that they were discontinued during the summer months.

Defendant paid his monthly instalments of $8 for the period of four months, the last payment being on May 20, 1920. On July 7, 1920, the defendant wrote plaintiff a

letter in which he expressed his inability to continue the course for the reason that he had recently been married and because he had neither the time nor the money necessary to complete the same. On the 13th of the same month plaintiff in a rather lengthy letter urged the defendant to continue the course, urging upon him the great advantages resulting therefrom, offering also some relief by way of reduction of the monthly payments, but insisting that no return of the volumes would be accepted and that the cancellation of the contract would be out of the question.

Subsequent to this last letter, the plaintiff always insisting upon a compliance with the contract and the payment of the stipulated amounts, the defendant, on October 12, 1920, wrote plaintiff, in which, among other things, he stated:

"As you may know, employees of the Goodrich branch here met jointly during the spring, but the classes were discontinued during the warm weather, the intention being to resume this fall. Probably this will be done, but I cannot see my way clear to continuing. Additional expenses incident to the establishment of a home make this absolutely impossible."

On November 10, 1920, defendant informed the plaintiff that he had returned the twenty-four volumes referred to in the agreement, sending them to 30 Newark avenue, Jersey City, New Jersey, by prepaid express. An express receipt was also introduced in evidence, in which the express company acknowledged the receipt from the Goodrich Rubber Company, the employer of the defendant, of one package of books of the value of $100, and in such receipt the plaintiff is named as consignee, and the destination of the consignment as Jersey City, New Jersey. There is no evidence in the record showing the actual receipt of the books by the plaintiff nor of the acceptance thereof, and no further communications were had between the parties until the commencement of this suit, after more than a year had elapsed. Immediately after the date of the return of the books the

defendant left Milwaukee without informing the plaintiff of his change in residence, and accepted employment in the city of Green Bay, where he continued to reside up to the time of the trial of the action.

The case was submitted to the jury upon a special verdict, in which the jury by their answers found (1) that the plaintiff and defendant agreed that the plaintiff should provide lectures by prominent Milwaukee business men at joint meetings of the employees of the Goodrich Rubber Company who subscribed to plaintiff's course; (2) that the plaintiff failed to furnish such lectures; (3) that the plaintiff accepted the return of the twenty-four text-books; (4) that the lectures mentioned in the contract as delivered to the defendant were not accepted by the defendant as a compliance with the contract.

At the close of the testimony plaintiff moved for a directed verdict, which motion was denied; thereupon plaintiff moved to change the answers of the jury to the questions of the special verdict, and for judgment in plaintiff's favor upon such verdict as so changed, and also for judgment notwithstanding the verdict, which motions were also denied by the court, and judgment was thereupon ordered and entered in defendant's favor, from which judgment plaintiff has appealed.

For the appellant there was a brief by *Fairchild, North, Parker & Bie,* attorneys, and *Samuel D. Hastings,* of counsel, all of Green Bay, and oral argument by *Walter T. Bie.*

For the respondent there was a brief by *Minahan, Minahan, Minahan & Duquaine* of Green Bay, and oral argument by *Edward M. Duquaine.*

DOERFLER, J.    Does the evidence in the case show a mutual rescission of an executory contract? The jury found that the twenty-four text-books had been returned by the defendant and that they were accepted by the plaintiff, and the judgment in part is based upon the theory that such

finding of the jury is conclusive, under the evidence in the case, to support a mutual rescission.    An executory contract in writing may be rescinded by an oral contract and such rescission may be by express agreement of the parties or may be inferred from the acts of the parties.   6 Ruling Case Law, p. 922, § 306.   If the text-books were returned to the plaintiff in an effort on the part of the defendant to rescind the contract, and .if the intention of the defendant to rescind was made plain to the plaintiff, and if the plaintiff either expressly accepted such books and the offer of rescission, or so conducted itself as to be inconsistent with a continuation of the contract, or was guilty of acts or of a failure to act from which it could reasonably be inferred that the books were accepted in accordance. with the defendant's offer, then a rescission resulted and the original contract was ended.   2 Black, Rescission, secs. 521, 527, 531.   Whether or not there is a rescission being generally a question of intent, ordinarily forms an issue for a jury to determine.   2 Black, Rescission, sec. 534.   It has also been held that in order to support the cancellation or rescission of a written contract by an oral contract the evidence must be clear, positive, and above suspicion.   6 Ruling Case Law, p. 922, § 306; *Falls v. Carpenter*, 21 N. C. 237, 28 Am. Dec. 592.

The contract between the parties was entered into in good faith.   In the note under the signature, which under the holding in *International Textbook Co. v. Mabbott*, 159 Wis. 423, 426, 150 N. W. 429, became a part of the contract, it was expressly provided that the contract is not subject to revocation, and that no reduction or allowance will be made on account of refusal or inability to enter upon or continue the course.   While it is settled by the authorities that such provision will not bar a mutual cancellation, nevertheless the same may be a persuasive force in determining whether or not, under the evidence, such a cancellation was in fact effected.   It is conceded by the defendant that early

in the month of July, 1920, he had concluded, for reasons personal to himself, not to carry out this contract, and that he expressly, in a letter to the plaintiff, pleaded for a release from his obligation. To this and other communications of the defendant the plaintiff in a clear and unmistakable manner expressed itself adversely to the granting of defendant's request in any event, and the defendant was informed that the contract would not be canceled or revoked.

On the 5th day of November, 1920, defendant claims that he returned the twenty-four text-books to the plaintiff at Jersey City, New Jersey, by express. The express receipt referred to in the statement of facts purports to have been issued to the Goodrich Rubber Company of Milwaukee, and while such receipt bears evidence of the consignment of one package of books to Jersey City, New Jersey, there is no evidence in the case that the plaintiff maintained its place of business there or that it ever received or accepted these books. The express receipt, while referring to one package of books, does not identify the same by title nor as being the same books which under the agreement had been transmitted to the defendant by the plaintiff. Neither is there any evidence in the case that the expressage had been paid.

The defense of rescission was interposed by the defendant and it was incumbent upon him to establish the same by a clear preponderance of the evidence. There being no evidence to establish either the receipt of these books by the plaintiff or the acceptance of the same, such defense must necessarily fall, and we therefore hold that there was no credible evidence to support the answer of the jury to the third question of the special verdict.

Was the evidence introduced by the defendant to prove that the course of instruction outlined in the contract with respect to the delivery of lectures by prominent business men of Milwaukee competent, and, if competent, is there any evidence in the case to show that such provision was

not complied with? The defendant, when called upon his adverse examination, made it clear that the various branches of service included and set forth in the contract referred to written lectures, directions, and correspondence. The note under the contract, with which the defendant was familiar, provided that "no modifications or conditions except as herein expressed in writing will be recognized." Plaintiff conducted what is known as a correspondence school, and the purpose of such school was to give instruction by written or printed communications. Such being the case, and in view of the express provisions of the contract and of the note forming a part thereof and of the defendant's understanding of what the service consisted, the oral testimony referred to was clearly incompetent and tended to add to, modify, or vary the terms of a written agreement. But assuming, nevertheless, the competency of such evidence, there is no testimony in the case to establish a breach of such alleged oral agreement. Defendant admitted that two or three of the lectures had been delivered in the spring of 1920, and that owing to the warm weather these lectures were discontinued for a time, with the intention of resuming them later. In the letter to the plaintiff written by defendant on October 12, 1920, the defendant stated: "As you may know, employees of the Goodrich branch here met jointly during the spring, but the classes were discontinued during the warm weather, the intention being to resume this fall. Probably this will be done, but I cannot see my way clear to continuing." Nothing whatever in the evidence tends to show that the defendant discontinued the course of instruction on account of any failure on the part of the plaintiff to furnish the oral lectures. On the contrary, it appears that no objection was made to the failure to deliver lectures during the summer months in the year 1920, and that he understood that the lectures would be resumed in the fall. The refusal on the part of the defendant to carry out his agreement was based upon his alleged inability, for

financial reasons, to make further payments. Therefore there is no evidence whatever to support the answers of the jury to the second and fourth questions of the special verdict.

Plaintiff contends that the contract is entire and indivisible and that its measure of damages is the contract price. In *International Textbook Co. v. Martin,* 82 Neb. 403; 117 N. W. 994, in a similar case, the court held:

"The contract is entire, and, upon defendant's refusal to perform and subsequent to the maturity of all the monthly payments, plaintiff ought to recover the consideration defendant agreed to pay it unless defendant can show some facts that reasonably and definitely tend to mitigate plaintiff's damages. Those facts should be pleaded by defendant and proved by him."

In 2 Sedgwick, Damages (9th ed.) § 612, it is said:

"The principle upon which these cases rest seems to be that the whole contract price is to be given, because it is impossible to show with the required certainty any pecuniary outlay which the plaintiff has been saved by the breach. The school must continue in session with its entire corps of instructors, although a scholar is withdrawn."

Similar rulings have been made in every jurisdiction where the question has arisen, as far as we have been able to find, excepting in Michigan.

The organization of a correspondence school and the manner of conducting its business is quite familiar to every one. Enrolments of students are solicited in various parts of the country, and arrangements for the conduct of the school and the employment of instructors and supervisors are accordingly made. No substantial benefit inures to the school by the dropping out of a student; on the contrary, it results in a financial loss.

The defendant having failed to show facts that can reasonably and definitely tend to mitigate plaintiff's damages, the plaintiff is entitled to a recovery of the full amount.

Plaintiff's counsel contend that "The covenants in the contract are independent, not to be performed within the same period of time, hence failure of one party to perform his covenants cannot be relied upon as a defense by the other."

The rule is stated in 9 Cyc. 642, as follows:

"In contracts containing executory considerations or mutual promises, that is to say, in which a promise on the one side is given in consideration of a promise on the other, the mere promise, and not the performance of it, constitutes the consideration, strictly so called; and the obligation of the one promise may be quite independent of the performance of the other. . . . Where by the terms of the contract the time to perform the covenant on the one side is to arrive, or may arrive, before the time for the performance of the covenant on the other side, the former is not dependent on the latter.  So where one party contracts to do work, and another to pay a stipulated price for the same, and the labor is capable of a just division and apportionment, these stipulations will be considered independent, and a full performance not as a condition precedent to any right of action, unless it is expressly so stipulated or is strongly implied." See also numerous cases cited in note.

An examination of the contract in the instant case discloses that the defendant agreed to pay a stipulated sum, namely, $136, in consideration of his enrolment as a student in plaintiff's course of instruction.  For the accommodation of the defendant, evidently, the privilege was extended to make these payments in seventeen monthly instalments. The provision which enabled the defendant to pay the total consideration in instalments, however, did not change his obligation with respect to the nature of his covenant, and if it be deemed an independent covenant in the one instance it must also be so deemed in the other.  In consideration of the promise of the defendant to pay, the plaintiff enrolled the defendant as one of its students, and, by way of an independent covenant, agreed to furnish the instruction in accordance with the terms of the contract.  The perform-

ance of defendant's covenant as to time was extended over
a period of seventeen months, while the performance of
plaintiff's covenant included a period of two years. Thus
we have clearly established a promise on the one side,
given in consideration of a promise on the other, and the
mere promise, and not the performance of it, constitutes
the consideration.

The other element included in the citation from Cyc.,
above referred to, which is a distinguishing characteristic
of a contract with independent covenants, is also clearly
present in the instant case, as is shown by the difference in
point of time within which the several promises are to be
performed. But as it has already been held by what has
heretofore been said that the note under the signature be-
comes a material part of the contract, a reference thereto
clearly stamps this contract as one containing independent
covenants, for it provides, among other things, that if any
part of the balance remains due and unpaid for sixty days
the entire balance becomes immediately due and payable,
and that the contract is not subject to revocation, and that
no reduction or allowance will be made on account of the
refusal or inability on the part of the defendant to complete
his course. The provisions of this contract, therefore, bring
it under the class of contracts containing independent cov-
enants.

It is not intended by what has been said herein that this
would have left the defendant remediless had he pleaded or
shown a failure on the part of the plaintiff to carry out its
contract, in which event plaintiff's damages might have been
mitigated or have been reduced by an offset or counter-
claim. Therefore there is no other conclusion to be arrived
at excepting the allowance of plaintiff's claim.

*By the Court.*—The judgment of the lower court is re-
versed, and the cause is remanded with directions to enter
judgment for the plaintiff for the sum of $104 and inter-
est, together with the costs and disbursements of the action.